**Richmond**

# MICHAEL MCCOY DUNCAN

v.

# COMMONWEALTH OF VIRGINIA

No. 0274-85

Decided May 6, 1986

COUNSEL

Harold J. Goodman, for appellant.

Lucy H. Allen, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—The appellant, Michael McCoy Duncan (Duncan), was convicted by jury trial on July 14, 1984, of statutory burglary and grand larceny. He was sentenced to three years in the state penitentiary on each charge in accordance with the jury's verdict. This court granted his petition for appeal limited to the following issues: (1) whether evidence that the appellant was employed by the victim after the crime should have been admitted by the court; and (2) whether statements concerning restitution should have been admitted by the court. The trial court refused to admit the evidence in both instances and we affirm.

At trial the Commonwealth presented evidence that Duncan was employed by Solite Masonry, and that he and two other em-

ployees broke a window and entered the place of business of Solite and stole $700 to $750 from a cash box. The court refused to permit Duncan to cross-examine witnesses for the Commonwealth to establish that he continued to work for Solite Masonry following the break-in, and that subsequent to his arrest, he helped pay for the damage to the broken window and made restitution for the money taken.

Duncan concedes that the facts which he sought to prove were not relevant to the issue of guilt. He submits that the evidence was, nevertheless, relevant because the jury not only determined guilt, but also fixed punishment, and thus, that the evidence of his continued employment and restitution were relevant to the sentencing function of the jury. We disagree.

The choice of sentencing procedures is a matter for legislative determination. *Ballard* v. *Commonwealth*, 228 Va. 213, 218, 321 S.E.2d 284, 287 (1984). The General Assembly, in carrying out its appropriate legislative function, has established a system for the ascertainment of punishment for those who have been convicted of crime as follows:

§ 19.2-295. *Ascertainment of Punishment.* - Within the limits prescribed by law, the term of confinement in the penitentiary or in jail and the amount of fine, if any, of a person convicted of a criminal offense, shall be ascertained by the jury, or by the court in cases tried without a jury.

Code § 19.2-303 provides for suspension or modification of the sentence and for probation:

After conviction, whether with or without jury, the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the accused on probation under such conditions as the court shall determine or may, as a condition of a suspended sentence, require the accused to make at least partial restitution to the aggrieved party or parties for damages or loss caused by the offense for which convicted, or to perform community service, or both, under terms and conditions which shall be entered in writing by the court.

■ Under the statutory scheme, the jury determines the guilt or innocence of the accused. If the jury finds that he is guilty, it then "ascertains" or "fixes" the maximum punishment in accordance with contemporary community values and within the limits established by law. To describe our system we can divine no better language than that used by Judge Donald Russell of the United States Court of Appeals for the Fourth Circuit:

> [T]he punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any mitigating facts that the convicted defendant can marshal. The verdict of the jury is the fixing of maximum punishment which may be served. Under such practice, the convicted criminal defendant is entitled to "two decisions" on the sentence, one by the jury and the other by the trial judge in the exercise of his statutory right to suspend; his "ultimate sentence . . . does not [therefore] rest with the jury" alone but is always subject to the control of the trial judge. This procedure makes the jury's finding little more than an advisory opinion or first-step decision. Any criticism of jury sentencing because it lacks the objectivity and principled decision of a judge is thus overcome by the existence of the power in the trial judge to bring his so-called superior judgment to bear upon the issue of proper punishment in reaching his decision whether to suspend the sentence or not.

*Vines* v. *Muncy*, 553 F.2d 342, 349 (4th Cir.), *cert. denied*, 434 U.S. 851 (1977) (citations omitted).

■ By vesting the trial court with discretionary authority to suspend or modify the sentence imposed by the jury, the legislature intended to leave the consideration of mitigating circumstances to the court. It is the court that has the responsibility of pronouncing the sentence after the maximum punishment is fixed by the jury. There are sound jurisprudential reasons for adhering to this position, most of which operate to protect the defendant.

■ The presentence report generally provides the court with mitigating evidence. A defendant convicted of a felony has an absolute right to have a presentence investigation and report prepared upon his request and submitted to the court prior to the

pronouncement of sentence. Code § 19.2-299; *Smith* v. *Commonwealth*, 217 Va. 329, 330, 228 S.E.2d 557, 558 (1976) (per curiam). A defendant introducing mitigating evidence at the guilt phase of a trial may be found to have put his character in issue, thereby opening the door for the prosecution to put on evidence of defendant's bad character, including his prior criminal record. *Land* v. *Commonwealth*, 211 Va. 223, 225, 176 S.E.2d 586, 588 (1970).

In *Killman* v. *State*, 274 Ark. 422, 625 S.W.2d 489 (1981), appellant Killman argued that a physician should have been allowed to testify that he was not a violent person and not a danger to the community and, therefore, was not in need of rehabilitation, as a mitigating circumstance for the jury to consider.

As in Virginia, the Arkansas Criminal Code provided that: "[T]he jury shall fix punishment as authorized by this Article." Likewise, the Arkansas Code "set out criteria for the court in making a determination as to suspension or probation." 625 S.W.2d at 491. The Supreme Court of Arkansas held that: "It is clearly the intent of the Arkansas Criminal Code that mitigating circumstances be left for the consideration of the sentencing court." *Id.*

One of the fundamental rules of trial procedure is that:

> For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto. Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence.

*Bunting* v. *Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967), (citing *Boggs* v. *Commonwealth*, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957)).

In the instant case, evidence that the defendant continued to be employed by the victim after commission of the burglary and larceny, and evidence that he made restitution for the damage to the window and money stolen was irrelevant to the issue of Duncan's guilt. The evidence, at best, was relevant only to the issue of punishment. We hold that the trial court properly refused to admit

the evidence before the jury in mitigation of punishment.

For the reasons stated, we affirm the judgment of the trial court.

*Affirmed.*

Benton, J., and Duff, J., concurred.